UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY BANKS,

    Plaintiff,

    v.

CBOCS WEST, INC., d/b/a Cracker Barrel
Old Country Store,

    Defendant.

No. 01 C 795
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Banks asks for reconsideration of two aspects of my ruling granting summary judgment of his claims of discrimination and retaliation. First, Banks argues that I misapprehended the parties' arguments and the controlling legal standard in finding, as a matter of law, that Defendant did not retaliate against him but properly declined to restore him to his position under the FMLA's "key employee" provision. *See* 29 U.S.C. §2614(b)(1). This is an appropriate ground for seeking reconsideration. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (observing that a motion for reconsideration is proper when the court has patently misunderstood a party or committed an error of apprehension).

### *Defendant's "Key Employee" Defense*

Banks argues that when he met with his manager (John Morst) in March 2000 to explain his need for a medical leave of absence, Morst demoted him, telling Banks that he could return only as an associate manager and not to his position of general manager. When Banks returned to work two months later, he did so as an associate manager. On summary judgment, Defendant argued that this was not a demotion, but a failure to restore Banks to his general manager position – a decision permitted under the FMLA's "key employee" exception. I accepted this defense, ruling

that there was evidence that Banks was a key employee and that Defendant had sufficiently informed Banks that he would be subject to the key employee exception even though it had not done so in writing.

In his motion for reconsideration, Banks points out that Defendant's key employee defense is inconsistent with evidence that Morst believed Banks was voluntarily stepping down from his position. Faced with the competing stories, I accepted for purposes of summary judgment Banks' statement that he was demoted. This opened the door to Defendant's argument that Banks' return as an associate manager was a "failure to restore" – an argument inconsistent with Morst's deposition testimony, in which he claims that Banks voluntarily stepped down. Both sides now insist that the other cannot have its cake and eat it too: Defendant argues that Banks cannot ask that the facts be construed in his favor and then attempt to discredit his employer's defense with evidence that contradicts his version of the facts, and Banks argues that Defendant cannot rely on a defense that contradicts its own version of the story. Defendant, however, has constructed a false contradiction. In asking me to accept his version of the story, Banks is not estopped from pointing to Morst's testimony in order to discredit his employer's defense.

Upon reconsideration of the record, it is clear that Morst testified that he believed, at the time he met with Banks in mid-March 2002, that Banks was stepping down from his position. While I must accept Banks' version of the facts (that he believed he was being told he could not return to his position even though he wanted to) I am not required to ignore evidence that Morst believed Banks was voluntarily stepping down, particularly when this fact does not necessarily contradict Banks' version of the events. Nor, in considering Defendant's response to Banks' argument, must I ignore facts that contradict its argument simply because those facts offer a

different perspective on Banks' story. Moreover, while I must accept the non-movant's facts as true, I am not required to accept either side's legal conclusions.

What I earlier believed was a legal dispute – whether Defendant could satisfy the standard for raising the "key employee" defense – is, upon reconsideration, a factual dispute that should not be resolved on summary judgment. Banks is entitled to argue that he was told he could not return to his position in response to his request for medical leave. Defendant can argue either that Banks voluntarily stepped down from his position or that it determined he was a key employee and properly denied restoration of his position, or even some combination of those arguments. Therefore, upon reconsideration, Defendant's motion for summary judgment of Banks' claim of retaliation is denied.

Because this issue may arise at trial, I also reconsider my decision that Defendant properly notified Banks that he would be denied restoration to his general manager position because of his key employee status. In light of the arguments raised by both parties, it is clear that Defendant cannot claim, as a matter of law, that it provided Banks sufficient notice that he was a key employee and would be denied restoration. Notwithstanding my previous reliance on the case, I conclude that *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132 (7th Cir. 2001), does not stand for the proposition that written notice is not required for an employer to deny restoration under the FMLA.

Defendant contends that it satisfied the "notice" requirements of 29 U.S.C. § 2614(b) and 29 C.F.R. 825.219 when Morst handed Banks the company's "Leave of Absence" form, which states that key employees "may" be denied restoration to their positions, and verbally informed Banks that his position would not be held for him.[1] Nonetheless, the same form indicates that a key

---

[1] The relevant portion of Defendant's Leave of Absence Document reads:
You are a "key" employee if you are a salaried employee and are

3

employee *will* receive written notification that restoration will be denied. Defendant has provided no evidence that such written notice was provided Banks, and the "Leave of Absence" form does not suffice. While I stand by my previous conclusion that Defendant could have made the determination that Banks' absence would cause serious or grievous harm, I now conclude that as a matter of law, Defendant did not provide the written notice required by statute. *See* 29 U.S.C. § 2614(b).

For these reasons, Banks may pursue his claim that he was demoted to the position of associate manager in violation of the FMLA after requesting medical leave in March 2000.

***Direct Evidence of Retaliation***

Banks also asks me to reconsider my conclusion that he failed to present direct evidence that he was subject to retaliation after filing an EEOC Charge. Defendant correctly notes that Banks is challenging my legal conclusions and not suggesting errors in apprehension on my part. Nonetheless, I briefly address Banks' argument for the sake of clarity.

A plaintiff who seeks to avoid summary judgment of a claim of retaliation through the "direct evidence" route must present "direct evidence (*evidence that establishes without resort to inferences from circumstantial evidence*) that he engaged in protected activity . . . and as a result suffered the adverse employment action of which he complains." *Stone v. Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (emphasis added). In granting summary judgment of Banks' claim of retaliation, I observed that the "timing of [Banks'] negative performance

---

among the highest paid 10% of employees within . 75 [sic] miles of the worksite. If you are a key employee, restoration to employment *may* be denied following FMLA leave on the grounds that such restoration will cause [Defendant] substantial and grievous economic harm. *Key employees will be notified in writing if it is decided that job restoration will be denied and the reasons therefore will be explained*.

4

evaluations is suspicious" but did not rise to the level of direct evidence of retaliation. *Banks v. CBOCS West, Inc.*, No. 01 C 0795, 2005 U.S. Dist. LEXIS 9503, at *34 (N.D. Ill. May 9, 2005). Timing may, in some cases, establish the causal link that renders otherwise circumstantial evidence direct evidence of retaliation, but the plaintiff must offer evidence that the adverse action was retaliation for engaging in protected activity. In this case, the facts establish that Banks began to receive negative evaluations after requesting promotion; however, those evaluations occurred long after his EEOC Complaint and his federal lawsuit alleging discrimination. The timing is suspicious because it suggests that his managers may have manufactured reasons not to promote him, but it is not evidence that their reason for doing so was retaliation for Banks' participation in protected activity.

Banks relies heavily upon both *Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot.*, 344 F.3d 680 (7th Cir. 2003), and *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994), to argue that my evaluation of his *prima facie* case of retaliation under the "indirect" method proves that there was, in fact, direct evidence of retaliation sufficient to withstand summary judgment.[2] Banks misreads these cases. In *Volovsek*, the Seventh Circuit denied summary judgment of the plaintiff's claim of sex discrimination because she had presented enough circumstantial evidence (under the "direct" method) to raise a genuine issue of fact as to whether she was denied a promotion because of her sex. 344 F.3d at 690. The same court denied the plaintiff's claim of retaliation, concluding that she failed to present sufficient direct evidence of retaliation. *Id*. at 690-91. The court refused to infer that her "non-promotion" was motivated by discriminatory or

---

[2]I concluded that "[a] jury could reasonably find that Defendant's new and undocumented justification for its failure to promote Banks demonstrates a retaliatory animus. I believe that Banks has raised a genuine issue of material fact regarding his qualifications for promotion at the time of his application, and Defendant's justification for its decision not to promote him." *Banks*, 2005 U.S. Dist. LEXIS at *38.

5

retaliatory intent. *Id*. at 691. *Troupe* established a plaintiff's ability to meet the "direct evidence" test through a "convincing mosaic of circumstantial evidence." 20 F.3d at 736. The case, however, did not involve a claim of retaliation, and a plaintiff claiming retaliation must offer facts demonstrating a causal connection between their protected activity and a subsequent adverse action. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).

*Volovsek* and *Troupe* do not require a different outcome in this case. Notwithstanding my conclusion that Banks had evidence, under the indirect method, from which a reasonable jury might infer retaliation, Banks did not demonstrate the necessary causal connection between his failed promotion and his earlier EEOC Complaint and federal suit – nor could he, without resort to inferences based on circumstantial evidence – in order to sustain a claim under the direct method. To the extent my prior observations about Banks' *prima facie* case suggest otherwise, they overstate Banks' case and should be disregarded. Summary judgment of Banks' claim of retaliation with respect to his failed promotion stands.

For these reasons, Plaintiff's motion for reconsideration is GRANTED IN PART and DENIED IN PART.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 15, 2005